PERRY v. SMITH AND LOOMIS.

1. PRINCIPAL AND AGENT. If the agent in good faith set apart a sum of money or chose in action, and treat it as the property of the principal, a court of equity will, at the option of the principal, treat it as his, unless the paramount interest or lien of some third person intervenes.

2. SAME: SETTING APART PROMISSORY NOTE. In setting aside a promissory note as the property of another, it is not essential to indorse an assignment on the instrument. It may be done by a separate writing, or by any other act which shows clearly and unequivocally that the title has passed from the payee to the assignee.

Appeal from Lucas District Court.

WEDNESDAY, OCTOBER 14.

BILL IN EQUITY to subject certain lands to the payment

of a judgment in favor of complainant, against respondent Smith. The facts are briefly these:

Smith owned a steam mill and forty acres of land. In March, 1859, he sold the same to McCormick for $10,000, receiving pay in real estate $1,000, and McCormick's notes for $9,000. In May, 1860, complainant recovered his judgment. By the terms of the contract, McCormick was to have a deed upon the payment of the purchase money. For several years prior to this Smith was the agent of his co-respondent Loomis for investing money in real estate, trading in the same, and making improvements thereon, &c. Loomis, for this purpose, had let him have some $30,000, which had been thus invested. Of this sum Smith had expended $2,000 in this steam mill, of which Loomis, however, at the time, had no special knowledge. When Smith sold to McCormick, he took one of the notes given for the purchase money, amounting to $2,000, placed it in a small wrapper and labeled it as the property of Loomis, which was to pay said Loomis, when collected, the two thousand dollars of his funds invested in the mill.

McCormick took possession of the mill and land at the time of his purchase, and used it unconditionally as his own. Prior to March, 1861, he had paid on the notes $1,280.87. At that time McCormick sold the mill property, including the forty acres, to one Wright — Smith being present, assisting and taking part in said negotiation. By the terms of this sale, Wright paid Smith the amount of the notes still held by him against McCormick, including the $2,000 note set apart to Loomis. McCormick received all his notes, surrendered his title bond, and beyond this received nothing for his interest in the mill. Most of the consideration paid by Wright was in land, a portion of which was deeded to Smith. The title to the land in controversy was in one Creighton, who, upon Wright's order, and under the direction of Smith, conveyed the same to

Loomis, he (Smith) designing the same to stand in the place of the $2,000 note. Loomis was advised of this at once, by a letter from Smith, and that he (Smith) would have the deed duly recorded. While the matter stood thus, and before the deed was filed for record, this bill was filed. Decree for complainant, and respondents appeal.

*James Baker* and *Theodore M. Stewart*, for the appellants, cited 2 L. C. in Eq., 560; *Jackson* v. *Seelye*, 16 John., 199; *Forsythe* v. *Clarke*, 3 Wend., 650; *White* v. *Carpenter*, 3 Paige's Ch., 398; *Rogers* v. *Murray*, 2 Id., 238; 12 Curtis S. C. Dec., 724; 2 Story's Eq., Jur., § 1202; Adam's Eq., 142; *Jackson* v. *Feller*, 2 Wend., 465; Rev., 1860, § 2213; 2 Spence's Eq. Jur., 213; 2 Story Eq. Jur., 612; 2 Tom. Law Dict., 692; Law Uses and Trusts, 346; 4 Kent, 347.

*T. B. Perry*, for the appellee.

Smith had an equitable interest in the land, and the judgment was a lien upon it. Rev., 1860, § 4105; *Blair* v. *Stewart*, 2 Iowa, 381; *White* v. *Carpenter*, 2 Paige Ch., 217; *Forsyth* v. *Clark*, 3 Wend., 637; *Rogers* v. *Murray*, 3 Paige Ch., 390; *Hickey* v. *Young et al.*, 1 J. J. Marsh., 1.

WRIGHT, J.—It is not averred in words that Smith was insolvent at the time of the conveyance to Loomis, nor that he is now insolvent. That which comes the nearest to it is a statement that he had not sufficient property, "the title to which is clear," to pay said judgment.

It is averred that the sale was made to McCormick, and the subsequent transfer and transaction made and had with Wright, for the purpose of defrauding creditors. To sustain this averment, however, there is no evidence. The answers deny it in express words. The property was sold for its full value, and the whole control of it passed into the hands of McCormick, and afterwards to Wright.

The only question is, whether, as against Loomis, Smith ever had such an interest, legal or equitable, in the lands conveyed by Creighton to Loomis, as could be reached by the judgment lien and execution of complainant.

Complainant maintains that, while Smith had authority to use the means of Loomis (who was a non-resident) for buying and improving the lands of Loomis, he was not authorized to use such means to improve his own lands; and that, if he did thus use the means of his principal, he would become his debtor, but that no resulting trust would arise thereby in favor of Loomis in the mill or other property purchased with said means.    Or this proposition may be stated thus: That, though the relation of debtor and creditor may have existed between them, the payment of the purchase money would not create a resulting trust, unless there was an intention to treat the money as belonging to Loomis, and it can be regarded as invested for him in lands, the title to which was lodged in Smith.    In this connection it is also insisted, that the note of $2,000 was never transferred by Smith to Loomis, and that it was Smith's money or property, and not the money or property of Loomis, which was invested in this land.

Smith was the agent of Loomis.    If, as such agent, he set apart, in good faith, a sum of money or chose in action, and treated it as the property of and belonging to his principal, as between them equity would, at the option of the principal, treat it as his.    And the same would be true as to third persons, who had acquired no prior or paramount right or lien.    And to thus set apart property like a promissory note, it was not necessary that it should be assigned by indorsement, but it might be done by any other writing, or other act, showing clearly and unequivocally that the title had passed from the payee to the real owner or assignee.    If the transfer was made in good faith, the possession of the agent was the possession of the principal.

So, if the agent had received of McCormick $2,000 in money, he could have deposited the same in good faith in the name of his principal, with a third person, and equity would have treated it as against third persons, having no equity, as the property of the principal.

But let us suppose that Smith's act in setting apart this note did not transfer in equity the title to Loomis. It is undisputed that he was owing Loomis at least this amount of money. Complainant's judgment was not a lien upon the note; nor would it have been if it had been money. Suppose Smith had taken two thousand dollars in money, and bought land in the name of Loomis, in the prosecution of his work as the agent of Loomis, would the fact that this money might have been part of the proceeds of the mill, originally owned by Smith, subject the land thus purchased to complainant's judgment? And particularly may we inquire whether it would, when he was but replacing, in a legitimate way, a sum of money which he had received from his principal, and had thus misapplied. Now, the presumption which arises where the purchase money is paid by one, and the title taken in the name of another, would not apply in such a case; for, though he may have advanced the purchase money, yet, if he bought for the party who received the deed, he would take all interest, legal or equitable, in the land. And that the party taking the title is the beneficiary, the equitable as well as legal owner, may always be shown by parol, notwithstanding the advancement of the purchase money by a third person. Such testimony is in support of the legal title, and is unaffected by the statute of frauds. Hill on Trustees, 96. We do not agree with complainant, that the contract between Smith and McCormick was canceled, and that Smith made a new sale to Wright. As we understand it, Wright purchased the property of McCormick, but to enable him to do so, he had to obtain the consent of Smith as

to the terms and manner of payment, as the whole purchase money was to be paid to him; in other words, Wright bought of McCormick, but paid the consideration to the holder of the legal title, Smith. A part of this consideration is this land now in controversy. Instead of receiving $2,000 in money, and buying in good faith, in the name of his principal, this land, he takes it in payment of a debt, which he had at least equitably transferred, and had the title made to the beneficiary, thus treating the land as properly held and managed in trust, instead of the money or the note. The good faith of the transaction is not impeached. Loomis subsequently adopted it and claimed the property as his own. In this claim we can see nothing inequitable, and the decree is, therefore,

Reversed.